UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INARI MEDICAL, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>IMPERATIVE CARE, INC., et al.,<br><br>    Defendants. | Case No. 24-cv-03117-EKL<br><br>**ORDER GRANTING IN PART MOTION TO STAY**<br><br>Re: Dkt. No. 100 |

In this patent infringement case, Defendant Imperative Care, Inc. asks the Court to stay the case in its entirety pending completion of *inter partes* review ("IPR") proceedings before the Patent Trial and Appeal Board ("PTAB"). Mot. to Stay, ECF No. 100. Plaintiff Inari Medical, Inc. opposes the stay. The Court carefully reviewed the parties' briefs and relevant authority and heard argument on July 16, 2025. For the following reasons, the Court GRANTS the motion in part and stays the case until February 4, 2026, at which point the stay will be re-evaluated.

**I.     BACKGROUND**

The patents in this case relate to mechanical thrombectomy systems – that is, devices used to remove blood clots from veins. The scope of the patents in suit has expanded three times in the past year. In the original complaint filed May 22, 2024, Inari asserted infringement of eight patents.[1] *See* Compl., ECF No. 1. On July 9, 2024, Inari filed a first amended complaint adding U.S. Patent No. 12,016,580 ('580 Patent). *See* First Am. Compl., ECF No. 20. On February 7, 2025, Inari filed a second amended complaint adding U.S. Patent Nos. 12,109,384 ('384 Patent)

---

[1] The eight original patents are U.S. Patent Nos. 11,697,011 ('011 Patent); 11,744,691 ('691 Patent); 11,697,012 ('012 Patent); 11,554,005 ('005 Patent); 11,844,921 ('921 Patent); 11,865,291 ('291 Patent); 11,969,333 (11-'333 Patent); 11,974,910 ('910 Patent).

and 12,156,669 ('669 Patent). *See* Second Am. Compl., ECF No. 68. With this amendment, Inari withdrew its claim of infringement as to the '011 Patent. Finally, on March 5, 2025, Inari filed a motion for leave to amend the complaint again, this time to assert the newly-issued U.S. Patent No. 12,239,333 (12-'333 Patent). *See* Mot. for Leave, ECF No. 88. Over Imperative Care's opposition, the Court granted Inari's motion for leave. *See* Min. Entry, ECF No. 111. On May 29, 2025, Inari filed the operative third amended complaint. Third Am. Compl. ECF No. 112. In sum, Inari currently asserts infringement of approximately 200 claims from eleven patents. Inari's Report Re: Claim Construction Schedule & Claim Narrowing at 3, ECF No. 116 ("Inari's Report").

As of the date of this Order, Imperative Care has filed ten IPR petitions, covering all patents that Inari asserted in the original and first amended complaint. These petitions were timely filed within one year after Inari asserted the patents against Imperative Care in this case. *See* 35 U.S.C. § 315(b). Imperative Care has not yet filed IPR petitions as to two of the most-recently asserted patents, which were added in February and May 2025. But Inari represents that it will challenge these patents, too. Mot. to Stay at 1; *see also* Stowell Decl. ¶ 3, ECF No. 101 ("Imperative Care anticipates filing *inter partes review* petitions on the other asserted patents."). At the motion hearing, Imperative Care represented that it would file IPR petitions as to the '669 Patent and the 12-'333 Patent in September and December 2025, respectively, after the statutory period for challenging these recently-issued patents has opened. 7/16/25 Hr'g Tr. 6:1-5, ECF No. 135; *see also* 35 U.S.C. § 311(c)(1).

To date, the PTAB has made institution decisions on four of the IPR petitions, granting three and denying one.[2] The PTAB is expected to make five more institution decisions by mid-January 2026. *See* 35 U.S.C. § 314(b).

---

[2] *See* ECF Nos. 90-1 (granting institution of IPR as to the '011 Patent); 90-2 (denying institution of IPR as to the '691 Patent); 109-1 (granting institution of IPR as to the '012 Patent); 121-1 (granting institution of IPR as to the '005 Patent).

2

## II. LEGAL STANDARD

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citations omitted). In exercising discretion to stay proceedings pending *inter partes* review, courts consider three primary factors: (1) the stage of the litigation; (2) "whether a stay will simplify the issues in question and trial of the case"; and (3) "whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Finjan, Inc. v. Symantec Corp.*, 139 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) (quoting *Evolutionary Intelligence, LLC v. Facebook, Inc.*, No. 13-cv-04202-SI, 2014 WL 261837, at *1 (N.D. Cal. Jan. 23, 2014)). "No single factor operates as the sole determinant of whether to stay. Rather, the factors should be weighed and balanced to get to the right outcome in each case." *LELO, Inc. v. Standard Innovation (US) Corp.*, No. 13-cv-01393-JD, 2014 WL 2879851, at *2 (N.D. Cal. June 24, 2014). The Court may also "balance considerations beyond those captured by the three-factor stay test. The burden litigation places on the court and the parties when IPR proceedings loom is one such consideration that district courts may rightfully choose to weigh." *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1362 (Fed. Cir. 2016).

## III. DISCUSSION

### A. Stage of the Litigation

The first factor, the stage of the litigation, favors a stay. In evaluating this factor, courts often consider "(1) whether parties have engaged in costly expert discovery and dispositive motion practice; (2) whether the court has issued its claim construction order; and (3) whether the court has set a trial date." *Finjan*, 139 F. Supp. 3d at 1035.

In this case, almost none of these events have occurred. As Inari recently argued, discovery is "at an early stage, with [Imperative Care] having just begun producing documents in late February." Mot. for Leave at 6. Inari correctly observed that "[t]he Court has not even set a date for the close of fact discovery." *Id.* There has been only limited expert discovery focused on the two patents at issue in Inari's motion for a preliminary injunction, and "summary judgment is not currently on the horizon." *LELO*, 2014 WL 2879851, at *3. The Court has not issued a claim

3

construction order – indeed, due to Inari's third amendment of its complaint, the parties have not briefed claim construction yet. *See* Order Re: Case Schedule, ECF No. 123. Finally, the Court has not set a trial date. *See* Case Mgmt. & Scheduling Order, ECF No. 54. All these facts confirm that the case is at an early stage, and "substantial work still remains for this case to be ready for trial." *Finjan*, 139 F. Supp. 3d at 1035. Thus, the first factor favors a stay.

### B.  Potential for Simplification and Conservation of Resources

The second factor, the potential for simplification, strongly favors a stay. A stay is justified where "the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue." *Slip Track Sys., Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1341 (Fed. Cir. 1998). "The standard is simplification of the district court case, not complete elimination of it by the PTAB." *LELO*, 2014 WL 2879851, at *3. A stay is likely to simplify this case in three ways.

First, the PTAB may invalidate some of Inari's patent claims, which would eliminate the need for this Court to resolve whether Imperative Care infringed those claims. The PTAB has already instituted IPR on three of Inari's patents. Thus, Imperative Care has demonstrated "that there is a reasonable likelihood that [it] would prevail" with respect to at least one of the claims challenged in each of those petitions. 35 U.S.C. § 314(a). Moreover, the IPR proceedings have already simplified this case in part because Inari withdrew the '011 Patent shortly after the PTAB instituted IPR on that patent.

Second, the IPR proceedings "could clarify the scope and interpretation of the asserted claims." *Anza Tech., Inc. v. Toshiba Am. Elec. Components Inc.*, No. 17-CV-07289-LHK, 2018 WL 4859167, at *2 (N.D. Cal. Sept. 28, 2018). For example, the parties agree that the term "filament" is one of the most important terms for claim construction. *See* Joint Claim Constr. Stmt. Ex. A at 1-4, ECF No. 107-1. This term will likely be construed in each of the three IPR petitions that PTAB has already instituted. *See* 7/16/25 Hr'g Tr. 21:13-19. Because the term "filament" is used in almost every patent that Inari asserts in this case, the PTAB's analysis will likely assist the Court even if some of the other pending IPR petitions are not granted. *See Google*

4

*LLC v. EcoFactor, Inc.*, No. 21-cv-03220-HSG, 2022 WL 6837715, at *2 (N.D. Cal. Oct. 11, 2022) (recognizing that IPR proceedings may simplify the case in light of overlap between patent claims).

Third, the IPR proceedings will constrain the invalidity arguments that Imperative Care asserts in this case. *See* Mot. to Stay at 2. For each IPR proceeding that results in a final written decision, Imperative Care will be precluded from arguing in this case "that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315(e)(2). The PTAB's analysis of Imperative Care's invalidity analysis and prior art references may also provide helpful guidance to the Court.

For these reasons, the Court also finds that "staying the case will allow the Court to avoid any further unnecessary expenditure of judicial and party resources." *Anza Tech.*, 2018 WL 4859167, at *2. Typically, as litigation advances, the scope of issues in dispute should be narrowed and focused. But in this case, the scope of Inari's asserted patent claims has fluctuated and expanded. In recent months, Inari has amended its complaint twice – once as of right, and once with leave of Court. These two amendments yielded three new patents in suit. In total, there are now approximately 200 patent claims asserted in this case. And Inari has requested "full fact discovery before it is forced to narrow the number of claims at issue." Inari's Report at 3. The broad scope of this case portends costly discovery and substantial motion practice, which surely will tax judicial and party resources. Against this backdrop, a stay pending the IPR proceedings will simplify the case and conserve resources.

Inari doubts that a stay will simplify the case because the PTAB has denied one of the IPR petitions, and it may deny other petitions, too. *See* Opp. at 1. But given the overlap between the patents in suit, and the record to date, a stay will likely simplify this case even if the PTAB does not institute IPR on every patent. The PTAB has made institution decisions on four of the IPR petitions, and it has granted three of them. This 75% institution rate tracks the PTAB's institution rate generally. *See* Al-Salam Decl. ¶ 5, ECF No. 106-1 (observing "that about 68% of IPR petitions were instituted in 2024"). Inari posits that institution rates may drop, and PTAB decisions may be further delayed, due to staffing changes and discretionary denials of IPR and

5

other reexamination petitions. *See id.* ¶ 6. But these putative trends seem unlikely to impact this case. So far, the PTAB has made timely institution decisions on each petition. It seems unlikely that the PTAB would issue a discretionary denial of Imperative Care's petitions because the challenged patents were issued recently, and parallel litigation (*i.e.*, this case) is at a relatively early stage. *Cf. id.* ¶ 6 (suggesting that IPR discretionary denials are more likely when there is "pending district court litigation involving the same patent").

Accordingly, the second factor strongly favors a stay.

### C. Undue Prejudice and Tactical Disadvantage

The third factor, prejudice, is neutral or weighs slightly against a stay. "All told, courts address four considerations when evaluating prejudice: (1) the timing of the IPR petition; (2) the timing of the stay request; (3) the status of review; and (4) the relationship of the parties." *Zomm, LLC v. Apple Inc.*, 391 F. Supp. 3d 946, 957 (N.D. Cal. 2019). "Where parties are direct competitors, the risk of prejudice to the non-moving party is higher than it would be otherwise." *Id.* at 958.

The first two subfactors do not raise any concerns because Imperative Care has acted diligently. Imperative Care filed its first IPR petition on July 8, 2024, within just two months after Inari filed this lawsuit. *See* ECF No. 90-1. Imperative Care has continued to periodically file IPR petitions on Inari's other patents, and all petitions were timely filed. Imperative Care filed this motion to stay shortly after the first IPR petition was granted, before claim construction briefing began, and at a time when Inari was continuing to add new patents to this case. In other words, Imperative Care sought a stay once there was some reason to believe that a stay might conserve judicial and party resources.

As to the third and fourth subfactors, Inari argues that it will be harmed by a stay because Imperative Care is one of its direct competitors in the market for thrombectomy systems, and the IPR proceedings are at an early stage. As support, Inari notes that it has sought a preliminary injunction in this case. Opp. at 1. But the Court has denied Inari's motion for a preliminary injunction and found that Inari is not likely to suffer irreparable harm while this case is pending. Order Denying Prelim. Inj., ECF No. 136. The Court also found that Inari could be adequately

6

1  compensated through a damages award (if it ultimately prevails), which would also address

2  potential harm to Inari during a stay.  *Id.*  To further address this concern, the Court will re-

3  evaluate the stay as the IPR proceedings progress.

### D. Balancing the Factors

The Court finds that, on balance, the factors above favor a stay.  This case is at a relatively early stage.  Given the broad scope of the case, and the progress in the IPR proceedings so far, a stay will likely simplify the case and conserve significant judicial and party resources.  A stay would not unduly prejudice Inari, nor confer an unfair tactical advantage on Imperative Care.  To the extent Inari may face some harm in the short term from competition against Imperative Care, ultimately that harm could be compensated with monetary damages if Inari ultimately prevails in this case.

However, this does not mean that the case should be stayed indefinitely, or until all IPR proceedings conclude.  Imperative Care has not filed IPR petitions as to two of the patents that were recently added to this case.  At this stage, it is not clear that the case should be stayed until the conclusion of IPR proceedings as to these patents.  The Court also recognizes that circumstances may change based on developments in the already pending IPR proceedings.

Accordingly, the Court STAYS this action in its entirety for approximately four months, until February 4, 2026.  *See Viavi Sols. Inc. v. Platinum Optics Tech. Inc.*, No. 5:20-CV-05501-EJD, 2021 WL 1893142, at *1 (N.D. Cal. May 11, 2021) (granting four-month stay "pending the PTAB's decision on whether to institute IPR petitions" to promote efficiency).  By then, the PTAB will have made institution decisions on Imperative Care's petitions as to the nine original patents in this case.  *See* 35 U.S.C. § 314(b).  At that time, the Court will consider whether the stay should be lifted or extended.

### IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1) This action is STAYED in its entirety until February 4, 2026.

(2) A further case management conference is set for January 28, 2026, at 1:30 p.m. via Zoom video.

(3) The parties shall file a joint case management statement by January 21, 2026, not to exceed ten pages. In the statement, the parties shall provide an update regarding the status of all pending IPR proceedings as to the patents asserted by Inari in this action. The parties shall identify and discuss the significance of any new IPR petitions that were filed, and any institution decisions that have issued, during the pendency of the stay. The parties shall also address whether the stay should be extended or lifted.

**IT IS SO ORDERED.**

Dated: September 29, 2025

Eumi K. Lee
United States District Judge